Michael Steinmetz
GARSON SÈGAL STEINMETZ FLADGATE LLP
Attorneys for Creditor William E. Roache
164 West 25th Street, Suite 11R
New York, NY 10001
(212) 380-3623

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

JOHN J. MACRONE,

                 Debtor.

-------------------------------------------------------------------x
WILLIAM E. ROACHE,

                 Plaintiff,

    -against-

JOHN J. MACRONE,

                 Defendant.
-------------------------------------------------------------------x

Chapter 7
Case No. 8-13-76045-dte

Adversary Proceeding. No. 14-

       Plaintiff-Creditor, William E. Roache ("Plaintiff", "Creditor", or "Roache"), by his counsel, Garson Sègal Steinmetz Fladgate LLP, complaining of John J. Macrone ("Defendant", "Debtor", or "Macrone"), respectfully alleges as follows:

**<u>Preliminary Statement</u>**

1.     By this action, Plaintiff seeks (i) entry of an order pursuant to 11 U.S.C. §§523 and 727 and Rules 4004, 4007, and 7001 of the Federal Rules of Bankruptcy Procedure determining that a debt due to Plaintiff is non-dischargeable; (ii) barring the Debtor's discharge; and (iii) entry of an order and judgment pursuant to CPLR Article 75 confirming an arbitration award for the sum of $699,393.47, plus interest.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff William E. Roache is a resident of Mastic, New York, and is listed as a creditor on Schedule F of Debtor's Chapter 7 petition.

3. Defendant Debtor John J. Macrone is an individual residing at 8 Amy's Path, East Quogue, New York 11942.

4. Because this action arises under the pending Chapter 7 bankruptcy case of the Debtor, the United States Bankruptcy Court, Eastern District of New York (the "Court"), has jurisdiction over this action under 28 U.S.C. §§ 157 and 1334 and Bankruptcy Rule 7001.

5. The statutory predicate for the claims asserted herein is sections 11 U.S.C. §§ 523 and 727 and Bankruptcy Rule 4004(d) and 7001(4), of the Federal Rules of Bankruptcy Procedure.

6. This is a core proceeding pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(I), and (b)(2)(J).

7. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408(1) and 1409(a).

8. Plaintiff has standing to bring this action pursuant to 11 U.S.C. § 727(c)(2).

## BACKGROUND

9. Plaintiff has in his possession a FINRA arbitration award ("the Award") against Defendant for the sum of $699,393.47. Exhibit A.

10. The Award follows two days of testimony (the "Hearing") before a FINRA arbitration panel on September 9 and 10, 2013.

11. The Award against Defendant resolves claims of; *inter alia*, fraud and breach of fiduciary duty as a financial broker.

12. Defendant embezzled Plaintiff's accumulated savings, comprising Plaintiff's retirement fund.

13. FINRA issued the Award on October 2, 2013.

14. Plaintiff was in the process of confirming the Award when Defendant filed this voluntary Bankruptcy under Chapter 7 of the Bankruptcy Code on November 27, 2013.

15. The Confirmation Proceeding was automatically stayed by virtue of the Defendant's bankruptcy filing.

16. Trustee Kenneth Kirshenbaum was qualified as the Chapter 7 Trustee on December 2, 2013.

17. The Trustee's position with regard to the subject matter of this action is presently unknown.

**Defendant's Fraud, Embezzlement, and Breach of Fiduciary Duty**

18. Macrone was a sophisticated and licensed professional financial services broker in 2002.

19. At that time, Macrone was a registered member of AXA, a FINRA-registered investment house.

20. Macrone befriended Roache, a trusting disabled military veteran.

21. Macrone quickly earned Roache's confidence and Roache entrusted his $300,000 maternal inheritance to Macrone's expertise.

22. Macrone left AXA shortly thereafter and he moved Roache's money too.

23. Macrone moved Roache's money to PFS.[1]

24. PFS assigned Mr. Edward Louk as Roache's account representative, but Macrone forged his own name into the first annuity statement from PFS, using a typewriter to replace "Louk" with "John J. Macrone, MBA". Exhibit B.[2]

---

[1] Macrone had been registered with PFS from 2003-2005. In 2007, while Macrone was moving Roache's money to PFS, he seemingly applied for registration with PFS but the registration was not completed. This may be related to the fact that Macrone forfeited his FINRA registration around the same time.

[2] Macrone used the same typewriter to prepare a check from Reliance Plans Division to John Macrone. Check #97 dated 1/26/2007 for $5,200 from Reliance to John Macrone. (More about Reliance Plans Division below). Attached

25. Macrone also completed the suitability form and forged Roache's initials. Exhibit D.

26. Macrone convinced Roache that he was handling the account and regularly assured Roache that the account was secure and successful.

27. In the following few years, Roache put his electrician's training to use and, when opportunities arose, bought and rehabilitated old homes for quick sale.

28. Upon Macrone's directive, Roache's profits from the home sales were also injected into the Macrone-controlled accounts.

29. On multiple occasions, Macrone told Roache of his experience as a real estate owner. Specifically, Macrone said that he owned property in Queens.[3]

30. In November 2007, Macrone forfeited his FINRA registration. Macrone hid this fact from Roache.

31. Macrone also opened a sham company, Reliance Plans Division ("Reliance"), solely for bilking the naive Roache.

32. Reliance had no other purpose and was in fact not even a company but simply a d/b/a/, a façade enabling Macrone to defraud Roache.

33. Macrone carefully cultivated the pretense of a personal friendship with Roache.

34. Under Macrone's insistence, involving many visits to Roache's home, Roache obediently transferred the accounts to his advisor's new office.

35. However, there was no office; there were no other clients; and the money was not invested. Macrone was stealing it all.

---

as Exhibit C. Only Macrone and not Roache, had access to these checks, as Macrone testified under oath at the FINRA Hearing.

[3] Isabelle Macrone, John J. Macrone's mother, owned this property. John Macrone is the signatory on the sale of this property in Queens.

36. Soon enough, Macrone, the highly educated financial expert gained control over the blue-collar worker's investment and banking accounts.

37. Macrone then enmeshed himself into Roache's small, but proportionally significant, real estate interests as well.

38. Macrone was so successful in his ruse that at one point he even obtained a copy of Roache's house key.

39. Macrone generated annual statements purporting to show that Roache's retirement account grew to almost $1,400,000. Exhibit E

40. Macrone also generated tables of account details purporting to show that Roache's retirement account grew to almost $1,400,000. Exhibit F.[4]

41. When Roache demanded regular periodic financial statements, Macrone proffered carefully crafted diversionary tactics, excuses, and explanations.

42. Macrone also showed Roache some trading table mock-ups in lieu of actual statements. Exhibit G.[5]

43. In 2009 Macrone generated "consolidation summaries" purporting to show the new account value. Exhibit H.

44. Eventually, Roache began to suspect that the $1,400,000 account number was falsified.

45. Macrone tried to obstruct Roache from uncovering the fraudulent scheme by recommending alternative investment strategies and planning for a slow, long-term recovery. A representative sample of emails is attached as Exhibit I.

46. All told, Macrone embezzled approximately $800,000 of Roache's hard-earned money deposits and deprived him of the opportunity to safely invest it all for a decade.

---

[4] Showing Roache's 2005/6 holdings at $1,400,000.
[5] Showing Roache's 2009 holdings at $540,000.

47. Macrone owed Roache a fiduciary duty at all relevant times.

48. Macrone betrayed Roache's confidences by, *inter alia*, fraudulently withdrawing copious amounts of cash from the Reliance Plans Division ccount unbeknownst to Roache. A representative sample of checks by Roache into the account and withdrawals of by Macrone is attached as Exhibit I.

49. Macrone took money from Roache and used it for Isabelle Group.

50. Macrone took money from Roache and used it to purchase 8 Amy's Path, East Quogue, New York, where Macrone currently resides.

51. With the help of his family, Macrone now seeks to avoid liability for his fraud.

**Defendant's Continuing Fraud[6]**

52. Almost immediately after FINRA issued its ≈$700,000 award, Macrone's sister, Lynn, filed a Confession of Judgment against Isabelle Group LLC ("Isabelle Group") for $800,000. Exhibit N

53. Isabelle is John Macrone's mother's name.

54. Isabelle Group is a Macrone-family owned entity.

55. Isabelle Group owns the Macrone-family properties in New York and Arizona.

56. Macrone is attorney-in-fact for Isabelle Group.

57. Isabelle Group purchased a property mortgage-free around the same time that Macrone withdrew copious amounts of cash from Roache's funds in the Reliance Plans Division Account.

58. Macrone's father is the signatory on the Isabelle Group Confession of Judgment to Lynn Macrone.

---

[6] Macrone signed a statement of participation in the FINRA Arbitration under oath subject to penalty of perjury. In his Reply to Roache's Complaint, Macrone avers that there were no further dealings beyond a single property transfer and he makes no mention of a patent transaction. Surprisingly, at the FINRA Hearing, Macrone attempted to portray all the "missing" embezzled money as an investment in a financially unsuccessful patent. At the Trustee Meeting, too, Macrone tried to portray the FINRA Award as resulting from a failed patent investment.

59. Isabelle Group owns the title to the residence at 8 Amy's Path, East Quogue, NY with a value exceeding $800,000.

60. Macrone told Roache multiple times that he (Macrone) owns property in New York.

61. Macrone has, on at least one occasion, made property tax payments for 8 Amy's Path, East Quogue, NY personally, while other times paying for Isabelle Group LLC. Exhibit K

62. Macrone retains an ownership interest in Isabelle Group.

**Defendant's False Petition Filing**

63. Defendant has knowingly and fraudulently filed a false petition in this matter.

64. Defendant has knowingly and fraudulently made false oaths or accounts in this matter.

65. Defendant knowingly and fraudulently filed a false Statement of Monthly Income and Means-Test Calculation.

66. Defendant knowingly and fraudulently lists his gross wages, salary, tips, bonuses, overtime, and commissions, as "Zero."

67. Defendant has gross wages, salary, tips, bonuses, overtime, or commissions.

68. Plaintiff has such information about Defendant's ongoing business relationships with numerous clients by virtue of Defendant's sworn testimony at the FINRA Hearing.

69. At the FIRNA Hearing Macrone claimed he has 75 <u>current</u> clients involving real estate ventures and small business financing.

70. Macrone further claimed parties needing capital compensated him through debt equity financing commissions.

71. Macrone also worked with Roache on real estate projects through 2012. A check for $65,000 that Roache sent Macrone in 2009 is attached as Exhibit M.

72. Macrone further claimed at the FINRA arbitration Hearing that he owns property in Bayshore, NY with Roache.

73. Defendant seeks to conceal that such business relationships and assets are worth substantial amounts of money.

74. Defendant either lied under oath to the FINRA panel or lied under oath to the United States Trustee when claiming that he has not done business with 75 clients since 2007.

75. Defendant seeks to reap the benefits of a Bankruptcy Discharge without disclosing Defendant's assets and true income.

76. Defendant seeks to conceal this information from the Trustee as well as Defendant's creditors.

77. Defendant has concealed business books and records that demonstrate Defendant's active attempt to conceal and misstate his true financial condition.

78. Defendant maintains business books and records in secret locations, as evidenced by records he suddenly produced immediately after the § 341 meeting despite testifying under oath at the FINRA Hearing that all such records had already been destroyed.

79. Defendant maintains certain business books and records in a private vehicle[7] and in his clients' offices, as he testified at the FINRA Hearing.

80. Defendant has failed to maintain certain business books and records in a calculated attempt to conceal and misstate his true financial condition.

81. Defendant fails to account for the funds advanced by family members within the past year.

---

[7] At the FINRA hearing, Macrone stated that he has his own vehicle. At the § 341 Meeting, Macrone stated that he was currently using a vehicle that previously belonged to his father. Macrone's father has transferred title to that vehicle to Macrone's fiancé, as per Macrone's testimony.

82. At the § 341 meeting, under oath, Macrone told the Trustee that he received some funds from his father in exchange for providing care.

83. During the FINRA Hearing and the §341 meeting of creditors, Macrone made and then amended various conflicting statements about monies his sister, Lynn, had advanced to him as either loans, loans that were later forgiven, or outright gifts.[8] No loans or gifts are noted in the Bankruptcy Petition.

84. Defendant knowingly and fraudulently filed a false Schedule "A."

85. Defendant knowingly and fraudulently seeks to conceal his interests in real property.

86. For example, in his sworn Reply to Roache's FINRA Complaint, Macrone states that he jointly owns a property in Bayshore, NY with Roache.

87. Defendant also has significant interests in real property located in East Quogue, New York 12779 and in Mesa, Arizona 85207, purchased with Macrone-family funds, and currently held under Isabelle Group title.

88. Defendant is currently the resident of the property in East Quogue, at 8 Amy's Path.

89. Defendant's interest in these properties exceeds $500,000 in undisclosed prepetition assets.

90. Defendant knowingly and fraudulently filed a false Schedule "B."

91. Defendant knowingly and fraudulently seeks to conceal his interests in number 1 type personal property.

92. Defendant knowingly and fraudulently states that he had $500 cash on hand.

---

[8] Macrone's statements were internally and externally inconsistent. He testified that his sister, Lynn, had extended a $500,000 for Isabelle Group's purchase of 8 Amy's Path and $300,000 for the Mesa, Arizona purchase years apart. The Confession of Judgment claims the entire $800,000 owed by Isabelle Group stems from a single loan of $800,000 in May 2005 that would appear to be outside the statute of limitations for the unspecified date of payment. Macrone also changed his testimony with respect to whether Macrone's father contributed his personal savings, if any, to the purchases.

9

93. Defendant knowingly and fraudulently omits number 2 type personal property.

94. Defendant knowingly and fraudulently states that he had zero checking, savings, or other financial account deposits.

95. Defendant knowingly and fraudulently omits number 5 type personal property.

96. Defendant knowingly and fraudulently states that he had zero books, art objects, collections, or collectibles.

97. Defendant knowingly and fraudulently omits number 13 type personal property.

98. Defendant knowingly and fraudulently states that he had zero stocks or interests in incorporated and unincorporated businesses.

99. Defendant has approximately seventy-five clients and retains equity interests in their businesses, as he testified under oath at the FINRA Hearing.

100. Defendant seeks to conceal that such business relationships and assets are worth substantial amounts of money.

101. Defendant knowingly and fraudulently omits number 14 type personal property.

102. Defendant knowingly and fraudulently states that he had zero interest in partnerships or joint ventures.

103. Defendant retains equity interests in some of his clients' ventures, as he testified at the FINRA Hearing.

104. Defendant knowingly and fraudulently omits number 17 type personal property.

105. Defendant knowingly and fraudulently states that he is not entitled to support from his father in exchange for providing care.

106. Defendant is entitled to, and receives, support from his father in exchange for providing personal care, as he testified to the Trustee at the § 341 meeting.

107. Defendant knowingly and fraudulently omits number 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, and 28 type personal property and/or states that it is "Zero."

108. Defendant knowingly and fraudulently states that he has zero "office equipment, furnishings, and supplies."

109. Defendant knowingly and fraudulently seeks to conceal that Defendant maintains office equipment, furnishings, and supplies in a vehicle and in his clients' offices, as he testified under oath at the FINRA Hearing.

110. Defendant knowingly and fraudulently states that he has zero "other personal property of any kind not already listed."

111. Defendant knowingly and fraudulently seeks to conceal his executory interests in real and/or personal property.

112. Defendant knowingly and fraudulently filed a false Schedule "I."

113. Defendant knowingly and fraudulently seeks to conceal his total net monthly take home pay.

114. Defendant knowingly and fraudulently filed a false Schedule "J."

115. Defendant knowingly and fraudulently seeks to conceal Defendant's average monthly expenditures.

116. Defendant knowingly and fraudulently filed a false Statement of Financial Affairs.

117. Defendant knowingly and fraudulently seeks to conceal his true financial affairs.

118. Macrone's statement of Financial Affairs form B-7 #18 states that his involvement with Reliance Plans Division ended in 2006.

119. However checks written from the Reliance account in 2007 show that Roache deposited, and Macrone removed, over $87,000 in 2007. Exhibit J

120. Macrone also fails to list his ownership of Willis Therapeutic on the Bankruptcy Petition.[9]

121. Macrone also convinced Roache to "invest" in the Willis Therapeutic patent, without disclosing his ownership interest.[10]

122. At the FINRA hearing, Macrone claimed that he gave up Reliance after the Willis Therapeutic patent was sold to Roache by Reliance in 2006 and a patent assignment recording filed thereon. However, documents turned over as part of this Bankruptcy show how Macrone shipped five Reliance patented beds in 2007 and four Reliance patented beds in 2010. Exhibit L

123. Macrone shipped these beds from 8 Amy's Path, East Quogue, NY.

124. Defendant knowingly and fraudulently misstates his income from employment or operation of a business.

125. Defendant knowingly and fraudulently misstates his income from sources other than employment or operation of business.

126. Defendant knowingly and fraudulently misstates his losses from the last year as "None."

127. Defendant knowingly and fraudulently misstates and conceals "Other transfers" within the two years immediately preceding the commencement of this case.

128. Defendant knowingly and fraudulently misstates and conceals his "Closed financial accounts" within the one-year immediately preceding the commencement of this case.

129. Defendant knowingly and fraudulently misstates and conceals "Property held for another person."

130. Defendant was gainfully employed, as he testified at the FINRA Hearing.

131. Defendant remains gainfully employed, as he testified at the FINRA Hearing.

---

[9] Willis Therapeutic had a patent for an articulating bed useful for medically dependent people.
[10] At the time, Macrone was already well aware that the patent would never turn a profit, but used this "investment" as an easy way to fraudulently extract $50,000 from Roache.

132. Defendant has failed to turn over any funds to Trustee Kenneth Kirshenbaum.

133. Defendant has concealed and converted estate funds.

134. Defendant has spoliated evidence of his concealment and diversions.

135. Defendant has failed to turn over all required recorded information, including books, documents, records, and papers, from which his true financial condition or business transactions may be ascertained.

136. Defendant has failed to turn over to Plaintiff after a timely demand, a copy of Defendant's statutory tax return disclosures, claiming no earnings for the past few years.

137. Defendant has engaged in gross misconduct with respect to his duties and obligations as a Debtor under the Bankruptcy Code.

## **AS AND FOR A FIRST CLAIM FOR RELIEF - 11 U.S.C. § 523(a)(2)(A)**

138. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "137" as if fully set forth at length herein.

139. Section 523 (a)(2)(A) of the Bankruptcy Code provides that (a) A discharge under section 727 of this title [11 USCS § 727] does not discharge an individual debtor from any debt-- (2) for money to the extent obtained, by-- (A) false pretenses, a false representation, or actual fraud.

140. Defendant has knowingly and with fraudulent intent made false statements and false representations to obtain Plaintiff's money.

141. Defendant obtained Plaintiff's money because of those false statements.

142. Defendant has committed actual fraud with Plaintiff's money.

143. Accordingly, Defendant has knowingly and fraudulently obtained Plaintiff's money through false pretenses, false representations, and actual fraud.

144. The Award represents the culmination of fact-finding about the false pretense, false representations, and actual fraud.

145. By virtue of the foregoing, the Award should be deemed non-dischargeable pursuant to §523(a)(2)(A) of the Bankruptcy Code.

## AS AND FOR A SECOND CLAIM FOR RELIEF - 11 U.S.C. § 523(a)(4)

146. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "145" as if fully set forth at length herein.

147. Section 523 (a)(4) of the Bankruptcy Code provides that (a) A discharge under section 727 of this title [11 USCS § 727], does not discharge an individual debtor from any debt-- (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

148. At all relevant times herein, Roache and Macrone had a client-broker relationship.

149. By virtue of the relationship, Defendant was bestowed with the responsibility of a fiduciary to Plaintiff and over the disposition and control of the Assets.

150. Macrone embezzled Roache's money.

151. The FINRA Award is the result of Macrone's fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

152. By virtue of Macrone's wrongful disposition of Roache's Assets, Roache holds an unsecured claim against the Debtor.

153. By virtue of the foregoing, the Award should be deemed non-dischargeable pursuant to §523(a)(4) of the Bankruptcy Code.

## AS AND FOR A THIRD CLAIM FOR RELIEF - 11 U.S.C. § 727(a)(4)(A)

154. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "153" as if set forth fully herein.

155. Section 727(a)(4)(A) of the Bankruptcy Code provides that the Court shall grant the debtor a discharge, unless— (4) the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account.

156. Defendant has knowingly and with fraudulent intent made statements under oath that were false with regard to Defendant's business transactions and estate, discovery of assets, business dealings or the existence or disposition of Defendant's property.

157. Accordingly, Defendant has knowingly and fraudulently, in or in connection with the case, made material false oaths or accounts.

158. Because of the foregoing, Plaintiff is entitled to the entry of Judgment denying Debtor's discharge pursuant to 11 U.S.C. 727 § (a)(4)(A).

## AS AND FOR A FOURTH CLAIM FOR RELIEF - 11 U.S.C. § 727(a)(2)(A)

159. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "158" as if set forth fully herein.

160. Section 727(a)(2)(A) of the Bankruptcy Code provides that the Court shall grant the debtor a discharge, unless— (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—(A) property of the debtor, within one year before the date of the filing of the petition.

161. Defendant has, with the intent to hinder, delay, or defraud creditors and the Trustees, transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed assets and funds of the estate within a year of the Filing Date.

162. By reason of the foregoing, Plaintiff is entitled to the entry of Judgment denying Debtor's discharge pursuant to 11 U.S.C. 727 § (a)(2)(A).

## AS AND FOR A FIFTH CLAIM FOR RELIEF - 11 U.S.C. § 727(a)(2)(B)

163. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "162" as if set forth fully herein.

164. Section 727(a)(2)(B) of the Bankruptcy Code provides that the Court shall grant the debtor a discharge, unless— (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed— (B) property of the estate, after the date of the filing of the petition.

165. Debtor has, with the intent to hinder, delay, or defraud creditors and the Trustees, transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed assets and funds of the estate after the Filing Date.

166. By reason of the foregoing, Plaintiff is entitled to the entry of Judgment denying Debtor's discharge pursuant to 11 U.S.C. 727 § (a)(2)(B).

## AS AND FOR A SIXTH CLAIM FOR RELIEF - 11 U.S.C. § 727(a)(3)

167. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "166" as if set forth fully herein.

168. Section 727(a)(3) of the Bankruptcy Code provides that the Court shall grant the debtor a discharge, unless— (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from

which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

169. Debtor has unjustifiably concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained.

170. Because of the foregoing, Plaintiff is entitled to the entry of Judgment denying Debtor's discharge pursuant to 11 U.S.C. 727 § (a)(3).

### AS AND FOR A SEVENTH CLAIM FOR RELIEF - 11 U.S.C. § 727(a)(4)(D)

171. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "170" as if set forth fully herein.

172. Section 727(a)(4)(D) of the Bankruptcy Code provides that the Court shall grant the debtor a discharge, unless— (4) the debtor knowingly and fraudulently, in or in connection with the case—(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

173. Debtor has withheld from the Trustee books, documents, records, and papers relating to his property or financial affairs.

174. Debtor has knowingly and with fraudulent intent withheld from the Trustee books, documents, records, and papers, relating to his business transactions, discovery of assets, business dealings, or the existence or disposition of Debtor's property.

175. By reason of the foregoing, Plaintiff is entitled to the entry of Judgment denying Debtor's discharge pursuant to 11 U.S.C. 727 § (a)(4)(D).

176. Plaintiff further avers that based upon the foregoing facts and others that will be developed in the course of discovery, the Debtor's actions are in contravention of the provisions of 11 U.S.C. §§727(a)(2), (3), or (4) and, therefore, constitute grounds to deny Debtor's discharge.

## AS AND FOR AN EIGHTH CLAIM FOR RELIEF - CPLR § 7510

177. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "178" as if set forth fully herein.

178. Article 7510 of the CPLR provides that the court shall confirm an award upon application of a party made within one year after its delivery to him unless the award is vacated or modified upon a ground specified in section 7511.

179. The arbitration award resolves the proceeding conducted under the auspices of FINRA Dispute Resolution between Petitioner and Respondent, captioned *William E. Roache vs. John Joseph Macrone*.

180. The Award was served upon the parties on October 2, 2013.

181. This petition, made in March 2014, is made within one year after the delivery of the award to the Petitioner, and that the award has not been vacated or modified upon any ground specified in CPLR § 7511.

182. By reason of the foregoing, Plaintiff is entitled to the entry of Judgment confirming the FINRA arbitration award pursuant to CPLR § 7510.

## RESERVATION OF RIGHTS

183. It is the intent of Plaintiff to object to the Defendant's discharge. As such, Plaintiff hereby specifically reserves its rights to amend this Complaint to bring any and all other causes of action that it may maintain against Defendant, including, without limitation, additional causes of action,

to the extent discovery in this action or further investigation by Plaintiff reveals such additional transfers, discovery of assets, or further causes of action.

**WHEREFORE,** Plaintiff respectfully prays for relief in this Complaint as follows:

184. On the FIRST CLAIM FOR RELIEF, deeming Roache's Award non-dischargeable pursuant to §523(a)(2)(A) of the Bankruptcy Code.

185. On the SECOND CLAIM FOR RELIEF, deeming Roache's Award non-dischargeable pursuant to §523(a)(4) of the Bankruptcy Code.

186. On the FIRST and SECOND CLAIMS FOR RELIEF, damages in an amount to be determined at trial, but not less than $699,393.47, plus interest at the statutory interest rate, running from October 2, 2013.

187. On the FIRST and SECOND CLAIMS FOR RELIEF, attorney's fees pursuant to Gen. Bus. Law § 349.

188. On the THIRD CLAIM FOR RELIEF, entry of an order and judgment denying the Debtor's discharge pursuant to §727(a)(4)(A) of the Bankruptcy Code.

189. On the FOURTH CLAIM FOR RELIEF, entry of an order and judgment denying the Debtor's discharge pursuant to §727(a)(2)(A) of the Bankruptcy Code.

190. On the FIFTH CLAIM FOR RELIEF, entry of an order and judgment denying the Debtor's discharge pursuant to §727(a)(2)(B) of the Bankruptcy Code.

191. On the SIXTH CLAIM FOR RELIEF, entry of an order and judgment denying the Debtor's discharge pursuant to §727(a)(3) of the Bankruptcy Code.

192. On the SEVENTH CLAIM FOR RELIEF, entry of an order and judgment denying the Debtor's discharge pursuant to §727(a)(4)(D) of the Bankruptcy Code.

193. On the EIGHTH CLAIM FOR RELIEF, entry of an order and judgment confirming the FINRA arbitration award for the sum of $699,393.47, plus interest at the statutory rate of 9% per annum accruing from November 3, 2013 until the award is paid in full.

194. For such other, further and equitable relief as this Court may deem just and proper.

Dated: New York, New York

March 10, 2014

                                        RESPECTFULLY SUBMITTED,

                                        GARSON SÈGAL STEINMETZ FLADGATE LLP
                                        *Attorneys for Creditor*
                                        *William E. Roache*

                                        By: /s/ Michael Steinmetz
                                        Michael Steinmetz (MS3164)
                                        164 West 25th Street, Suite 11R
                                        New York, NY 10001
                                        212-380-3623
                                        ms@gs2law.com